Council, Bob Muller on behalf of City Water Light & Power, which is the City of Springfield. The Workers' Comp'n Commission, obviously in this case, found that Mr. Egan's current condition of ill-being, which necessitated surgery, was causally related to the 7-13-11 injury. Our position on this is that this decision was based on speculation and conjecture. We do not believe there is sufficient evidence in the record to support that decision. For starters, prior to this injury date, Mr. Egan had very significant low back problems. According to the medical, he had failed physical therapy and chiropractic therapy. In July of 2010, a year before, the records show that he had a several-year history of low back problems with a worsening in the last two years. There was no mention of any injury causing this worsening. What about the Commission saying that the record reflects increased treatment as well as new and different symptoms following the July 2011 accident? What about that? I think they're wrong and I will explain to you why. Tell me why the record doesn't support that. What the record shows is that this guy had the event, we don't dispute that, on 7-13-11, but our point is that it was a very minor flare-up. It's called a flare-up. I was going to go into a little bit of his history of back problems, but the point is he had a lot of back problems before. This is a flare-up. The doctor basically says, I've treated him for this condition on these dates in 2010 and these dates in 2011, including 7-15-11, two days after the accident. So he's including this with all the treatment before that in the low back, which suggests to me it's the same thing. What about the reporting? Didn't he say in the claimant, I believe, he reported testifying pain radiated into his lower extremities, which he did not experience prior to 2011? Yes. It's not different than... You have an explanation for that too, I suspect. I do. That didn't happen immediately after the July 2011 injury. He had no radiation immediately after that. It happened in October. Yeah, he had another flare-up in October. His symptoms changed at that point. After the July 2011 injury, Dr. Western did not send him for an EMG, did not send him for an MRI or a CT scan, did not send him immediately to a specialist of any kind until Mr. Egan asked him to, which is when he saw Dr. Russell in September. But in early October, he comes in complaining of severe back pain and radiation down the left side. That had never happened before then, going back to the July of 2011. It was always just back pain with no radiation. And the point I made in the brief and I'll make now is, I think there was an intervening incident that kicked off those symptoms at that time and led Dr. Western to send him for an EMG and for diagnostic films. It's totally different, but it's not right after July. It's in October. What was the intervening accident? Well, the problem is, it's an intervening accident because his symptoms changed. We don't have proof by way of, oh, this happened. We don't have that. But the change in symptoms and the change in what the doctor did means to me that there was an intervening accident. Why else? That hadn't been, he hadn't had the radiating problems. He comes in in severe pain. What do you mean intervening? He's saying it happened because of the July 2011 accident. Who's saying? The claimant. Obviously. He's not a doctor. Well, his testimony is competent. There's a commission to consider, isn't it? You're saying no, it's not? There are certain things that are, that I consider competent in his testimony and there might be others that I, you know, think are wrong. I'm not saying he lied on purpose. I just think they're inconsistent with the medical. But that's why I stopped. I didn't want to say yes completely. But the point is, something happened there. Well, you got Weston. If you don't like his testimony, Weston clearly says that this accident caused an aggravation. You're pointing out Anderson. And again, you'd have to acknowledge the commission determines the weight and credibility of the expert medical testimony, doesn't it? Yes. Okay. Yes. In that regard, they relied on what those films showed in October and what the EMG showed in October. What they didn't do, what they failed to do, was take into consideration the films that were taken in 2014, which did not show evidence of the bulging disc superimposed and did not show evidence of nerve root compression or spinal canal stenosis. There was also an EMG done in 2014, which was normal negative. They didn't explain how that fit in. They spent so much time saying how important it was for that MRI and EMG in October of 2011 and failed to say how that fit in with the 2014 findings on the films and the EMG. And no doctor testified to that either. Wait a minute. Maybe there's some confusion here. Western O'Kane claimant's 2011 accident caused an aggravation of his preexisting low back condition. Western found claimant's post-accident MRI showed more of a disc bulge present than the MRI performed on claimant in 2010. What's wrong with that? I didn't say anything was wrong with that. What I'm saying is if you look at the 2014 films and the interpretation of that, it doesn't show that anymore. And they didn't address that. And no doctor addressed that. What are we to do with that? As I said, my position is that it was an intervening accident. Did Anderson say anything about an intervening accident? Did he identify any event or did he say that medically this is unexplainable, there had to have been an intervening event? So can you just argue this in the absence of any evidence? Well, I would say of course not. But there is evidence. And that's what I was saying. There's medical evidence of a change in his symptoms and a change in the treatment protocol. Well, isn't that by definition an aggravation? That's what I'm saying. But an aggravation isn't necessarily a change in condition, which is what's contemplated with an intervening accident. See, this is where I'm stuck, Your Honor. We got something that happened in July, which I think is extremely minor given the fact that he was not sent for any studies, not sent for an epidural or any of that. Treatment stayed the same as it had been. He was off work six days. Treatment stayed the same. It changed after this event that I think happened in early October of 2011. I don't think you can ignore that and put it all on July 2011. Well, I just don't understand how that can be done because there's a big difference in the treatment. Well, it might be different if you had Anderson coming in and saying, look, this is medically implausible that that incident could have resulted in the condition that we're dealing with now, and there had to have been something else that happened, and then you could claim intervening accident. But you're saying that Anderson didn't say anything like that. He didn't. He did not. That's the difficulty I think that we're having is that you may be engaged in supposition and projection because we don't have anything in the record to support what your suspicions may be. I understand that. It wasn't addressed by Anderson and it wasn't addressed by West. But it's still there in my opinion. After that, in June of 2012, Dr. Western gave this guy a full-duty release to return to work. There's an office note from Dr. Fortin in October of 2012 indicating that he was seeing Mr. Egan for an annual back pain check. He mentions at that time that the guy had seen Dr. Cecivi who indicated no surgery was appropriate. Obviously, Dr. Russell had already said that in 2011. Dr. Western testified at his deposition on 12-6-12 that he was not, Mr. Egan was not a surgical candidate. Now, all of this happens in 2011 and 2012. As of 12-6-12, the deposition, not a surgical candidate. What happened? Why is he now a surgical candidate? We need some explanation of that, and it's not there. It's not there. Why is the fact that he needs surgery over 17 months after this accident, why is that related to the incident in July of 2011 without some testimony saying that? We don't have that. It's not there. I just think that's a leap, again, speculation, conjecture, whatever, that this guy's had back problems for a long time. Dr. Cecivi mentions normal degeneration, and the guy had had problems in 2010. It said he'd had problems for years and had gotten worse in the last two years with no mention of any injury. He's degenerating. The point is, that is clear, but there's no testimony to say, is this degeneration? Is this related to what happened in July of 2011? No. Based on that, I don't think, again, it's speculation. The commission can't go that far. So on that basis, I think there's not sufficient evidence to support what the commission did, what they said, finding a causal relationship, and that should be reversed. Thank you very much. Thank you, counsel. Counsel may respond. Counsel, I'll be brief on that. Can we say an opposite conclusion is clearly apparent? I don't think so. The opinion by Arbitrator Puglia was very detailed with all the records. Does the record itself support the decision? I believe it does. I don't think there's anything in the record which would justify throwing this all out. Counsel is right. Speculation should not be a basis for it, but I think the detailed records support the decision, and yet he argues you should speculate that something happened. We had four doctors that treated the petitioner, and one doctor did an IME examination. I think the substance of all those doctors is the fact that he had a condition, and now he's got to the point that he needs surgery. Many times, particularly with the back, you do conservative, conservative, until you run out of options, and that's what Dr. Givi said, he's run out of options. In fact, Dr. Pineda said that. He suggested a stimulator, but said if that doesn't work, then surgery is the only option. I just think that the record as a whole supports the decision and clearly is not against the menace, but is way to the evidence, which is, I believe, the basis for the court to make a decision. Do you have any questions? No. I don't believe there are. Thank you, counsel. Counsel, you may reply. I don't have much to say because it's all been said, but I want to make one point again because I have the opportunity. There's no explanation in the record for what changed this guy's condition from a nonsurgical condition to a surgical condition. And on top of that, there's no explanation or testimony or opinion that the surgery is related back to the July 2011 injury. Thank you very much. Thank you, counsel, both for your arguments in this matter. We've taken our advisement. A written disposition shall issue. Will the court please call the next case?